I think I think you can you can see you're posing all right so I think we I think it works here. Mr. Janich we're gonna have you go first and let us know how much time you want to reserve for rebuttal and then Mr. Mody? Mody? Mody okay we'll have you you'll go second. Go you may proceed Mr. Janich. Thank you may it please the court. My name is Eitan Castle Janich and I'm representing Scott Connelly in this appeal. Connelly has been unable to work since November of 2018 as a result of the functional effects of as many severe impairments including post-status post left ankle fracture, essential hypertension, atrial fibrillation, obesity, major depressive disorder, and generalized anxiety disorder. I want to focus on the errors that were made by ALJ that require remand for a new hearing. First Mr. Connelly had a treating physician Dr. Franzen who was treating him prior to his alleged onset date and shortly after his alleged onset date wrote an opinion. Well basically he wrote a treatment note and in the treatment note he wrote that Connelly continues to have significant pain that prevents him from being able to work. Now the significance of this evidence from a treating physician is that this supports Connelly's testimony about how his ankle pain prevented him from being on his feet enough to be able to. Mr. Janich excuse me was that was are you referring to the note of December 14th of 2018 by Dr. Franzen? Yes. And is it correct that there was evidence that Dr. Franzen had cleared him again to work by mid-January in the physical therapy notes? The thing about being cleared to work just meant he was cleared to be to to there wasn't he wasn't cleared what level it doesn't say what level of work he was cleared to do and the thing is that from the time he stopped working his depression and anxiety became so bad that he was basically not leaving his bed much of the time he was really and he talked about this in his testimony he was doing very poorly and so this is not a case where it's just this is a man who weighs over 300 pounds he's a large man he's but it's a lot of weight he broke in his ankle and it hadn't healed well and the pain recurred over time I mean this isn't you know he's not able to be physically do the kind of physical labor he used to do and that's one of the odd things I'll just focusing for a moment on the physical the ALJ in this case found that he could do medium work medium work requires lifting 50 pounds for one-third of the workday up to 50 pounds and being on your feet for six hours in an eight-hour day those are simply unrealistic it's not even close to his his abilities so that's the physical angle on here in this case the regard to the mental problems he was evaluated by a psychologist dr. Wingate and she opined that he had a lot of significant limitations marked limitations in his ability to mentally function in a work environment he also started getting mental health counseling and he got mental health treatment from Dwayne Price from a mental health therapist for several years and mr. Price ended up writing up an opinion letter basically saying that he was not that functional mentally he wouldn't be you know so it's um it's Janice could I interrupt for a second I mean as in many social security cases as you know we've got evidence pointing in both directions here both supporting and undermining a claim of disability we've got a pretty detailed opinion by an ALJ evaluating that evidence could I ask you to focus on the the ALJ's discussion of mr. Simmons comments in particular and where that fits in with Ninth Circuit precedent and the relevant regulations at this point thank you um that is a big concern not just in this case but in many cases I hear from you tomorrow in the the Ahern case as well similar similar issues but it would be helpful at least to me if you could focus in on those and in particular the the ALJ here did not ignore what mr. Simmons had to say but but recited it said he can she considered it and explained I thought tell me why I'm wrong that Simmons's comments just weren't that persuasive given the overall record okay so there's two separate issues involved in this case one is the one you just addressed I'll address that first which is did the ALJ state germane reasons for rejecting mr. Simmons observations and basically the ALJ generally stated that in her opinion mr. Simmons statements were contradicted by the contrary to the medical evidence for example and the problem with that is the evidence regarding certainly regarding his mental health problems is fairly consistent through the record about him having problems and that they were he was and yet he continued to have problems not 100% of the time but he was still not fully functional not to where he could leave his home and go out and try to do some sort of any kind of work on a full-time basis and that's the issue as far as what what was disabling here wasn't his just his just his ankle or just his back or just anything like that or just his mental health problems but the combination of them resulting in him spending much of his time reclining spending much of his time just not not feeling well enough to be able to go out and do things and I know that's mr. Simmons statement I don't think that the ALJ's analysis of that is fair because it doesn't it doesn't really identify any medical evidence that actually contradicts his observations at that point in the opinion the ALJ had had just finished we're on but we're on page 19 of 22 at that point and she's already explained in pretty great detail why she did not accept mr. Connelly's own testimony about how debilitating his conditions are did she need to repeat all that in in addressing Simmons no you see if her reasons for rejecting Connelly's testimony were clear and convincing if they were actually supported by the evidence I think it would be legitimate for her to then point to you know there's well there's not a circuit precedent that says if she provides good reasons for rejecting a person's opinion and the lay evidence is similar to that or even identical to that those reasons could apply to rejecting they don't have to apply but they could apply to rejecting the lay evidence but what's different here as is quite often true is that although the ALJ listed a long series of reasons for rejecting Connelly's testimony the reasons don't withstand careful scrutiny some of the reasons are really offensive almost for example the fact that he was a the sole caregiver of a disabled child was treated by the ALJ as an example of how functional he is whereas you know he was he was the only thing keeping that child out of foster care so the fact that he's trying that he's doing that doesn't show that he could that he was mentally or physically able to go out and perform a 40-hour workweek doing medium work there's just no connection there and that's just one of many examples and I try to address all of her examples I know her analysis is long but long doesn't mean it makes sense for example in the in what a big part of her analysis is just basically reciting the the medical evidence and as you pointed out the medical evidence as is only often it's I mean it's almost always going to be true there's gonna be medical medical evidence that shows a person is doing better and there's gonna be medical evidence showing they're doing worse question is did she say any kind of provide any kind of convincing reasons to reject his testimony that was consistent with the medical evidence that showed he was doing worse and she didn't and because she didn't she can't the the the evidence from mr. Simmons the lay evidence can't just piggyback on the analysis that wasn't a valid analysis now I didn't mention that this the second issue which I'm not gonna go into it length I don't think it's as relevant here as it would be it could be in some other cases is that the government seeks to use post-hoc analysis to rely on amended medical evidence regulations that did not address lay evidence other than to say that these medical evidence regulations don't apply to lay evidence you don't have to use these rules to analyze lay evidence and Social Security has consistently in most of my current cases been arguing that this these revised medical evidence regulations completely change the legal standards applying to to lay evidence and they and they basically abrogate all law that Ninth Circuit law on the issue of lay evidence I think that's all nonsense and and it's just not if they want to change the lay evidence regulations they certainly can but they better put it in the title of their of their proposed their proposed regulations they better put it in the actual regulations and explain which regulations involving lay evidence they are overruling and how they're changing those regulations they didn't do any of that and yet we've got the government arguing but as you pointed out I'm such the other issue here which does because this is a case where the judge did address the evidence that other issue is not the the critical issue the I think the critical issue under the law is were her reasons germane and I tried to spell it out in my brief why none of her reasons for rejecting his observations were germane the important thing about lay evidence what makes it so different is that it's not just the person telling how they feel which is very important because you can't know what somebody's pain is like or what somebody just depression is like what it feels like to not get out of bed or not want to without seeing without them telling you that but similarly some of the comments from mr. Simmons about it comes over there and and and and and Connelly was and you you've read the description I don't want to really recite it in the argument here but he was not fit he was he was obviously not taking care of himself and so those kind of observations are very important evidence you won't see that even from medical appointments because when you go to a medical appointment you take the bus there and you're there and you're you try to put on your you know yourself in your best light but um mr. Simmons was recording what he saw I think that's very important evidence here I don't think the judge properly rejected it mr. young so you're down about two minutes how much time did you want to reserve for rebuttal about two minutes I'll use up my last 11 seconds the only other issue I wanted to mention is that the the Appeals Council evidence which is another psychological evaluation confirms that his condition was consistent was continuing and persisting and I would like to reserve my time now sounds good thank you we'll go ahead and hear from the other side and then we'll come back to you miss Janice thank you good morning may it please the court a seam Modi on behalf of the Commissioner of Social Security substantial evidence supports the ALJ is finding here that the claimant was not disabled and I think that's best illustrated here by the ALJ is exhaustive comparing and contrasting between dire claims about the claimant's symptoms and limitations and the mountain of evidence that paints a far more benign picture the claimants overall functioning to focus on a few examples as if I opponent noted the claimant alleged that he was emotionally paralyzed devastated markedly impaired in his ability to interact with others and physically incapable of the most basic of physical tasks but as ALJ pointed out the claimant stopped working for reasons unrelated to his allegedly disabling impairments and his medical sources during the period issue noted that he had a general disinclination to work had been balking at the idea of employment and was wedded to the idea of obtaining Social Security disability benefits despite being told about the benefits of pursuing vocational rehabilitation and that his condition was stable to put it simply despite the claimants allegations of being largely able to do anything in the course of the day the ALJ pointed out the claim was able to do really most other activities other than engaging substantial gainful activity that that during the period of issue the claimant engaged in self-employment that he was working selling the contents of the storage locker with a friend that he volunteered and was chopping and stacking firewood which is something noted throughout the record that he was again the primary caregiver for his son with special needs homeschooled his son successfully and advocated on his son's behalf for his son's claims for disability benefits the claimant didn't appear also remain physically active by riding his bicycle to get around performing home projects gardening socializing with friends and performing household errands and chores and on top of this you know aside from you know while the claimant here is alleging debilitating pain and emotional distress the treatment records showed a consistent picture of improvement his outpatient counseling records showed a huge improvement I think these are words from the record itself a huge improvement with psychotropic medication likewise the claimant reported he had a significant or dramatic improvement in his left ankle condition physical therapy and the medication has brought his hypertension under control and had eliminated or nearly eliminated the swelling in his legs and that during this period that he was physically active able to engage in physical labor and cleared to work without any physical restrictions so the ALJ appropriately noted these inconsistencies undermine medical opinions and non medical source testimony endorsing the claimant's allegations of disabling symptoms and limitations and while the claimant pins his claims for remand based on vague conclusions about the extent of his mental limitations short-term work restrictions statements reserved to the Commissioner that are neither inherently that are neither valuable or persuasive or medical opinion evidence that addresses a time period that's completely different to the issue that is that issue in this case this is all unavailing. Mr. Mody could I ask you to focus in on the treatment of the Simmons evidence and in and how the Ninth Circuit precedent and the changes in the regulations as you see it affect the appropriate treatment of such evidence? Yes your honor so under the revised regulations non-medical evidence such as that for Mr. Simmons the claimant's friend that is evidence per 1520 CD is evidence that ALJ is no longer required to articulate how that evidence was considered in the decision well it's not exactly what it says right the new regulation says we're not going to apply the same standards to this lay evidence that we apply to medical evidence right? Yes your honor. Okay and I guess my my problem it I can read some of your argument is just saying well the ALJ may have to consider this but she doesn't have to articulate anything about it is that right? Yes your honor. Okay I don't think it is but let me let me let me lay out the reasoning and and get your response to it if I could. In in other regulations and I'm specifically here from the the disability insurance benefits regulation 404.1545 about how we're going to evaluate a three says among other things we'll consider descriptions and observations of your limitations from your impairments including limitations that result from your symptoms such as pain provided by you your family neighbors friends or other persons right so we're going to consider that and it seems to me that just as a matter of general administrative law we ordinarily expect at least a sufficient articulation to permit meaningful judicial review and I don't see anything in the regs that seems to disavow that kind of principle as applied to lay evidence. Well your honor I think the way the regulations the revised medical evidence are laid out and I think this is also further explained in in the when the agency published this rule in the Federal Register and the agency explained that this kind of evidence is evidence that ALJ isn't required to articulate how they considered but doesn't mean that the ALJ should never do so that there may be circumstances where it would be appropriate for the ALJ to articulate how they how they did so but they left that out to the ALJ's discretion and and I think this evidence falls in that category and there are and as we know in our brief there are this is not the only instance where courts have recognized a distinction between evidence the ALJ is required to consider and what they're required to articulate. I recognize that distinction and you know the ALJ says I considered it but if that's all that's said and it otherwise seems fairly meaty substantial deserving of comment how do we deal with such a case if the ALJ just says I considered it and it's not good enough so. Well your honor I think this is a question we don't actually have to address in this instance because the ALJ did address the statements from Mr. Simmons and provided multiple reasons for why she found those that testimony as you noted earlier to be not entirely reliable that the ALJ noted that Mr. Simmons essentially echoed the claimant's own statements about being physically conditioned to the point where he was unable to care for himself and that he had an emotional distress as well that largely hindered his functioning during the course of the day and the ALJ pointed out that like the claimant's own testimony that she didn't accept those statements in full because on one hand the medical evidence showed you know largely normal physical and mental status and as well as that an improvement in his symptoms with mental health treatment. I appreciate that point I guess I'm I'm concerned about how your more aggressive position though fits in with the principle that sometimes described as well you've got to show your work as an ALJ. Well here your honor I think this is again the question we don't necessarily have to get to because the ALJ did explain how she considered this testimony and provided reasons for rejecting it and I think the point we're making in our brief is is emphasizing the distinction that under the revisions to the medical evidence regulations that this falls in the category unlike medical opinion evidence this non-medical source evidence is evidence the ALJ no longer is required to articulate and even though we don't yet have published Ninth Circuit case law on this point we do have a line of Ninth Circuit cases running from and I think we know we cite to a couple of them but there's I think one more recent that came out after our brief which is Trogdon T-R-O-G-D-O-N versus O'Malley that reaffirms this principle that that this medical non-medical source evidence is evidence that ALJ is no longer required to articulate how they considered it in the decision and so we do have this this line again not nothing published on this at this point as of yet but it was Trogdon presidential it was Trogdon presidential if I could just follow up on one I haven't checked the list of counsel for tomorrow's cases are you staying to argue the Ahern case tomorrow yes your honor okay so so so as I would it be proper to say that your position is since they no longer have to articulate it but you acknowledge that you do have to that the ALJ does have to consider it if it's and I think it doesn't sound like anybody if the lay testimony is not particularly you know you read it and it doesn't do much then I'm not sure that that would be an issue I think as I understood my colleague the question was what if you know what if you read the lay testimony you think yeah it actually kind of does something here but it but the ALJ did not articulate then what do we do with that we have as I understand a clear regulation now that says they don't have to articulate it we also have regulations and just general administrative law principles they do have to consider it so is your position then that we would we would need to ask ourselves under substantial evidence review does the record compel you know looking at this lay evidence does the record compel a different conclusion than the ALJ reached here if we thought it did then we would be remanding it and turning it but if not thank you we just if the ALJ doesn't articulate anything about it that's what we would do we'd apply the substantial evidence standard the does the record compel and evaluate that and reach our conclusion and we'd either we'd either affirm I guess affirm in these case because it comes from the district court affirm or we or we'd remand is that your position yes your honor I think that's exactly the case your honor I think if this court were to this is evidence that the ALJ deemed not essential for for one reason or another but the court were to determine that actually goes to the heart of this case and would undermine the substantial evidence supporting the ALJ's findings in that instance that evidence would justify remand but this is not one such case because of course the ALJ did address it but but ultimately yes it should the court deem that evidence to be so where the change in the regulations matters is in theory we would have remanded it before if we looked at it and we said you know this this is somewhat meaty evidence we're not necessarily convinced that it requires a different result that it compels a different result but the ALJ didn't discuss this issue so we're gonna send it back to and that's where this would this this new standard would make a difference is merely not discussing it doesn't make make the difference but it depends on the substance of actually what it does exactly your honor and there isn't really a whole lot of daylight between that standard that you're laying out your honor and the old standard because under the old standard the old germane reason standard this court was still applying a harmless error analysis when the ALJ if the ALJ didn't address those third-party statements in decision this court was was examining the ALJ's oversight doing so under a harmless error analysis and so there was still substantial evidence underlying the ALJ's decision if that ALJ's oversight in doing so was inconsequential to the ultimate disability determination this court was still affirming and so under the current standard it would roughly would be essentially the same situation your honor I guess the difference is the practical difference would be under the old standard when things got sent back to the ALJ for a violation in theory they could be sent back saying you know we don't know if this makes a difference but you need to articulate whether you think it and sort of give that give the ALJ the for and now we aren't going to be sending it back in theory unless we unless we think it makes a difference so we have already said it makes a difference if we send it back and so in some ways it's like a less friendly if we send it back it's a less friendly standard for the government I think if that were the animating reason for the for the remand your honor I think that's a fair fair representation yes your honor you have anything further no your honor I think just in closing you know based on based on the record that was before the ALJ the ALJ reasonably found the claim was not disabled during the period of issue and we asked that this court uphold it just supports order and judgment affirming the Commissioner's final decision well thank you counsel thank your honor we'll come back to you oh I think you're still muted mr. Yannick nope still muted okay good was a little delay there so I just want to address a few of the things I didn't address before that are important in the analysis in this case first of all colleagues need to elevate his legs he has to elevate his legs because he gets edema it's documented in the record he gets edema there's no no debate about it the medical evidence shows that and he chooses to deal with that by keeping his legs elevated as much as possible and there's no the ALJ does not state any convincing or even any legitimate reason for rejecting his testimony about his need to elevate his feet back to the mr. Simmons observations there was the ALJ listed had a short list of the the things that supposedly contradicted his observations this included he did the part-time work with a part-time work there's a long description of it in the record where he was basically using his place his home was being used as a to sell off a bunch of stuff that they got out of these storage units he wasn't it wasn't full-time work and it wasn't he wasn't doing the physical end of it there's the chopping and stacking firewood who was he doing that for he was doing it as there's a project in Olympia where people volunteer to chop firewood for people who can't afford firewood and so people donate firewood and people go there and chop it together he wasn't doing it as a living he wasn't doing it very often but he did it as a way of contributing to the community he asked he took care of his son I've already discussed that he rode his bicycle he hasn't had a driver's license in a long long time he has a history of alcoholism but he's been maintaining his sobriety and so yeah that's his best way of getting around besides the bus and the final thing is that he's doing errands and chores yes he did errands and chores he had to take care of stuff but he didn't do him very well because the place was not maintained and Mr. Simmons observations of that confirm that he was struggling to even do those basic activities daily living so in my I submit to the court that the the issue of whether or not the amended the revised medical evidence regulations change anything about how an ALJ must consider and discuss the art articulate the basis of how they considered important lay evidence it's just not right and under administrative theories of administrative law you've got to make it real clear if they're changing something that important and and there is a harmless error analysis if the evidence here even accepting it doesn't change anything it's harmless error not to discuss it in length but here was discussed the reasons are not germane and the evidence actually if it's credited actually shows that he could not do full-time medium-level work and so I let you go over a little bit I'll give you a few seconds to sum up if you need it that's it your honor so I I think that the case should be remanded for a new hearing all right well thank you very much machine I thank you to both counsel that's closes out our day-to-day we'll be back tomorrow same time same place different cases thank you all all right the court stands adjourned until tomorrow at 9 a.m. thank you
judges: Hamilton, VANDYKE, THOMAS